26-C-1240

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 JUL 15 P 12: 14

OF COURT

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Nicholas L. Torresin, Plaintiff, v. Brian Hervat, B-H Group Inc., Jugar LLC, Kenneth Bergquist, Eric Belongia, Michael P. Dunn, and John Does 1-10, Defendants. | Case No.: [To Be Assigned] RICO STATEMENT Pursuant to 18 U.S.C. Sections 1961-1968 THE PROPERTY FRAUD ENTERPRISE |

Note on Plaintiffs: This RICO Statement is filed by Nicholas L. Torresin, individually and as the injured party. Torresin Real Estate Investments, LLC (TREI) is identified as an additional injured party whose business operations were destroyed by the enterprise's conduct. Nick Torresin appears pro se. TREI's formal joinder as a named plaintiff is subject to retention of counsel.

## PREFATORY NOTE -- THE PROPERTY FRAUD ENTERPRISE

This RICO Statement concerns the enterprise that acquired Nicholas L. Torresin's real property at 5819 52nd Street, Kenosha, Wisconsin through fraud, manufactured defaults, and coordinated concealment. It is analytically distinct from DOC-057, which concerns the Legal Cover-Up Enterprise assembled afterward to protect this one. The two enterprises share only one thing: their victim.

The Property Fraud Enterprise operated in two acts. Act One was the acquisition: Hervat used a fraudulent lease, a manufactured tax default, and a coordinated eviction scheme designed to strip Torresin of his property rights and option to purchase. Act Two was the assault: within the first year of the lease, Hervat launched a rapid elimination campaign -- fifteen manufactured defaults, withheld income and expense

statements, failure to pay property taxes using Torresin's own money held in trust, and diverted tenants -- all designed to evict Torresin as quickly as possible. The plan was not to outlast Torresin over five years. The plan was to eliminate him within the first year. The fraud was not a single bad moment. It was a premeditated, immediate assault carried out by a fiduciary using Torresin's own funds held in trust, his own tenants, and his own property income -- among other weapons -- in furtherance of the manufactured default.

---

## QUESTION 1. Alleged violations of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d).

---

Plaintiff alleges violations of ALL FOUR subsections of 18 U.S.C. Section 1962:

[a] Section 1962(a): Income derived from racketeering -- including rental income, option proceeds, and the $60,000 Carlson deposit -- was received by persons employed by or associated with the enterprise and was deposited into Jugar LLC's operating account -- its subsequent use is subject to discovery.

[b] Section 1962(b): Defendants acquired and maintained an interest in real property (5819 52nd St, Kenosha, WI 53144) and in the enterprise (the B-H Group/Jugar network) through a pattern of racketeering activity.

[c] Section 1962(c): Each defendant was employed by or associated with the enterprise and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

[d] Section 1962(d): Each defendant participated in a conspiracy to violate Sections 1962(a), (b), and (c). The lease fabrication, option scheme, manufactured defaults, tax conversion, eviction, fraudulent conveyance, and litigation cover-up were coordinated acts of a conspiracy among the named defendants and associated persons, to be further established through discovery.

---

- 2 -

## QUESTION 2. Each defendant's misconduct and basis of liability.

**[ BRIAN HERVAT ]**

Principal architect of the scheme. Personally controlled B-H Group Inc. and directed Jugar LLC despite Bergquist being its nominal sole member. Simultaneously served as Torresin's property manager (fiduciary) and as the de facto controller of Jugar LLC -- the entity acquiring Torresin's property. This undisclosed conflict of interest is corroborated by DFI public records showing Hervat as registered agent of Jugar LLC while serving as Torresin's property manager.

Hervat induced Torresin to enter the transaction by advising him he did not need his own attorney -- "we can use mine" -- a statement documented in the DSPS B-H Group report. This induced Torresin to rely exclusively on Hervat and Dunn: Hervat, who owed Torresin a fiduciary duty as his property manager and deliberately exploited it; and Dunn, who had no attorney-client relationship with Torresin and no duty to protect him whatsoever.

Co-created the fraudulent lease on February 1, 2017 (Exhibit 1), with attorney Michael Dunn (Kerkman & Dunn) -- a 5-year term designed to give Jugar LLC possessory rights and manufacture a future default. Issued a notice of default to engineer the eviction. Testified falsely under oath in small claims court (Case No. 2021SC000877 -- Exhibit 14) that he had nothing to do with the Jugar/TREI transaction.

> SMS -- March 27, 2017: "My attorney thinks we should wait to ask until the docs are signed. He does not want to draw attention to 5819 52nd Street."

Directed concealment of the scheme from all transaction parties. The full scope of Hervat's direct coordination with Dunn remains partially concealed -- email communications between Hervat and Dunn spanning three withheld pages (Received Nos. 256-258) have been suppressed behind a claim of attorney-client privilege. Plaintiff intends to move to compel production under the crime-fraud exception, as the

withheld communications were made in furtherance of the fraudulent scheme described herein and fall outside any cognizable privilege.

As property manager, Hervat held Torresin's rental income in B-H Group trust accounts and had full financial access across most of Torresin's properties during the relevant period. Hervat used this access to carry out a deliberate four-part sabotage campaign:

(a) Withheld property tax payments while holding sufficient funds in trust -- conversion of Torresin funds (Exhibit 19).

(b) Increased reserves without notice or consent.

(c) Diverted tenants to competing Jugar-owned properties.

(d) Suppressed income and expense statements to deny Torresin information needed to monitor his accounts (Exhibit 13).

---

### [ B-H GROUP INC. ]

B-H Group Inc. is the subject of DSPS Case No. 22 REB 119 -- a disciplinary proceeding initiated February 2022 and active as of the date of this filing -- with proceedings advancing toward formal adjudication before an Administrative Law Judge.

Enterprise front and operational arm of the property fraud scheme.

Property manager for 5819 52nd St and most of Torresin's associated properties.

Controlled trust accounts holding Torresin's rental receipts.

Sent a false notice of default in furtherance of the scheme.

Failed to publish required owner statements.

B-H Group's computer and email systems were used to run all transaction documents.

Establishes Hervat's involvement in the Jugar transaction despite his false testimony in 2021SC000877 that he had nothing to do with it.

The $60,000 Carlson deposit was routed through B-H Group accounts into Jugar LLC's operating account.

---

**[ JUGAR LLC ]**

Nominal acquirer of 5819 52nd St.

Capitalized at only $10 -- with Bergquist as nominal sole member.

Used as a legal fiction to acquire Torresin's property while shielding Hervat from personal liability.

Plaintiff in the fraudulent eviction action (Case No. 2018SC000731).

Conduit for the $60,000 Carlson deposit.

Hervat served as registered agent of Jugar LLC -- a matter of public DFI record -- creating a documented conflict of interest that was never disclosed to Torresin.

---

**[ KENNETH BERGQUIST ]**

Kenneth Bergquist is the nominal sole owner of Jugar LLC, capitalized at $10. He holds ownership interest in at least two additional affiliated entities -- Resolute Equity LLC and Renatus LLC -- the current operational status of these entities is subject to discovery. Bergquist is approximately 90 years of age and has exercised no meaningful operational control over any of these entities. Brian Hervat has functioned as the de facto operator of the entire Bergquist LLC portfolio through B-H Group Inc., collecting rents and exercising complete financial authority over all properties held across all three entities.

Bergquist signed the lease at 5819 52nd Street as Member of Jugar LLC -- making him personally present in the transaction documentation -- but operational direction came entirely from Hervat. Michael Dunn (Kerkman & Dunn) served simultaneously as attorney of record for both Hervat/B-H Group and Jugar LLC, demonstrating that these

entities functioned as a single unified enterprise under common legal direction. Dunn's representation of both sides of transactions involving Torresin was not disclosed.

Bergquist and Hervat share a documented litigation history predating the Torresin transaction by more than four years. That history includes:

[1] A 2012 Kenosha County action for $147,000 -- a record that may include additional proceedings to be identified through discovery.

[2] Case No. 2013CV000249 (Citizens Bank of Mukwonago -- Kenosha County Circuit Court) -- a foreclosure action in which both Bergquist and Hervat were named defendants on a judgment of $885,142.47, satisfied December 11, 2013.

*Together, these records establish a documented financial relationship and shared legal exposure predating the Torresin transaction by four-plus years. The relationship is not merely financial: Kenneth Bergquist was married to Brian Hervat's mother and was at one time Brian Hervat's stepfather -- a fact disclosed in Torresin's retained counsel's July 11, 2019 discovery letter to Dunn (Corris to Dunn, July 11, 2019, Interrogatory No. 4). This family connection explains why Jugar LLC was capitalized at $10 with Bergquist as nominal sole member while Hervat exercised complete operational control -- and why that arrangement was never disclosed to Torresin.*

Bergquist was identified in the pretrial report for Case No. 18CV000899 (Exhibit 13A) as a witness beyond the subpoena power of the court -- underscoring the need for federal process.

---

## [ ERIC BELONGIA ]

Former owner and responsible broker of B-H Group Inc. Subject of prior DSPS discipline (Case No. 15 REB 086 -- closed). Holds the real estate license that gave B-H Group Inc. its operating authority during the scheme -- making him personally accountable for the entity's licensed conduct. Belongia set up management agreements

for Torresin's duplexes and began paperwork on the car lot, then withdrew from visible involvement -- leaving Hervat to operate with full authority and no licensed broker oversight.

Owns Vertical Props LLC. The nature and terms of any transactions involving Vertical Props LLC are subject to discovery.

Belongia's connection to Jugar LLC predates the Torresin transaction. In Case No. 2012SC002988 (Kenosha County Circuit Court -- Jugar LLC v. Tina Mikels et al., filed July 20, 2012), Belongia appeared in court representing Jugar LLC and identified himself as a member of Jugar LLC -- notwithstanding that DFI records (Exhibit 21) identify Kenneth Bergquist as Jugar's sole member. This court appearance establishes Belongia as a de facto Jugar insider dating back to at least 2012, a full five years before the Torresin transaction, and raises material questions regarding the accuracy of Jugar LLC's DFI membership filings.

---

### [ MICHAEL P. DUNN -- Kerkman & Dunn, Bar No. 1012005 ]

Attorney and co-architect of the scheme.

Dunn's involvement began in January 2017 -- co-creating the fraudulent lease with Hervat before it was presented to Torresin.

Extended to the closing table itself -- directing Hervat by telephone to add handwritten amendment language increasing Torresin's option purchase price by $100,000 above the stated option price (Exhibit 3 -- signed amendment dated February 15, 2017).

The handwriting is Hervat's. The authorship is Dunn's.

Dunn's method throughout the enterprise was to direct conduct through others while keeping his own hands clean on paper.

Dunn built the scheme to be invisible. One email made it permanent.

Case 2:26-cv-01240-BHL    Filed 07/15/26    Page 7 of 31    Document 1

Paid from B-H Group accounts ($1,052 on March 21, 2017, labeled "legal expense working on Torresin Real Estate deal") -- subsequently credited back to Torresin after Complainant's review, but the initial billing reveals the enterprise's method. This billing entry establishes Dunn's role in the transaction as a matter of B-H Group's own financial records.

**[ BHGI 0641 -- THE UNAUTHORIZED SOUTHPORT THREAT -- February 15, 2017 (Exhibit 7) ]**

On February 15, 2017 -- one day before the deed transfer -- Dunn sent an email to Jeffrey Schuster of Stupar Schuster & Bartell S.C. (Southport Bank's attorneys) arguing that the $225,000 second mortgage on Torresin's duplex properties was legally uncollectible, citing Sec. Natl Bank v. Cohen, 41 Wis. 2d 710, 714 (1969).

> "If the bank does not release its mortgage interest in the subject properties it will be buying a slander of title lawsuit from Mr. Torresin. I recommend the bank re-think its position."

Dunn threatened Southport Bank with a slander of title lawsuit in Torresin's name.

Without Torresin's knowledge.

Without Torresin's authorization.

Without any attorney-client relationship with Torresin.

At no point did Dunn contact Torresin, disclose this communication, or seek Torresin's consent.

This constitutes unauthorized practice on behalf of a non-client, a wire fraud predicate, and a direct breach of the duty Dunn owed as an officer of the court upon knowing that Torresin was unrepresented.

This document was produced by B-H Group as Bates No. BHGI 0641 -- only because Southport's attorneys also possessed it, making suppression impossible.

Dunn sent an unfiled motion for sanctions on September 23, 2019 (Exhibit 13B) -- a private threat instrument sent directly to Corris -- never filed -- against Torresin and attorney Corris personally. The motion was filed six weeks after Corris's July 11, 2019 letter to Dunn demanding discovery into the Bergquist-Hervat personal relationship -- including the documented family connection between them. The motion named Corris personally. The conspiracy claim was abandoned four months later.

BHGI 0641 establishes Dunn's role in the Southport payoff as a matter of his own written record.

Concealed 46 emails with Hervat behind a privilege log.

The three-page privilege log represents the only Dunn-Hervat communications for which no third party existed who could independently produce them.

Produced without court order -- Corris had them -- and ignored them.

---

## QUESTION 3. Alleged wrongdoers other than defendants.

---

### [ ROBERT B. CORRIS -- Link Between Enterprises ]

Corris is the link between DOC-021 (The Property Fraud Enterprise) and DOC-057 (The Legal Cover-Up Enterprise).

He is not a defendant in this action.

On November 30, 2019 -- Corris, Dunn, and Monson held a private meeting from which Torresin and Attorney Pilmaier were excluded.

Corris emerged and advised Torresin to abandon the conspiracy and aiding and abetting claims -- the claims most damaging to Dunn.

Corris held the proof that made the conspiracy claim viable -- documented in his own July 11, 2019 letter -- and recommended abandoning it anyway.

Case 2:26-cv-01240-BHL    Filed 07/15/26    Page 9 of 31    Document 1

His conduct as retained counsel is the subject of DOC-057, OLR proceedings, and a separate malpractice track.

---

## [ ERIK H. MONSON -- Bar No. 1032463 ]

Counsel of record for defendants Hervat and B-H Group Inc. One day after designating Joe Griese of Inter Hold LLC as an expert witness, Monson transmitted 109 pages of Torresin's federal and state tax returns and IRS-related financial records to Griese by email -- without court authorization and in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78, both federal and state criminal violations. Monson also filed a false sworn pretrial report and a false affidavit in the underlying proceedings.

---

## [ JOE GRIESE -- Inter Hold LLC, New Berlin, WI ]

Designated as expert witness for defendants on October 28, 2019. Received 109 pages of Torresin's federal and state tax returns and IRS-related financial records from Monson the following day. Conducted his analysis exclusively from incomplete, one-sided information provided by defendants -- never contacting Torresin or Torresin's counsel.

---

## [ CAROLYN KIRBY -- B-H Group Inc. ]

Carolyn Kirby is Brian Hervat's wife and a B-H Group Inc. employee responsible for billing and paperwork operations. Her role within the enterprise's financial infrastructure included handling the forwarding of attorney invoices received by Hervat through the B-H Group financial records. Kirby operated from the enterprise's shared address at 6113 14th Ave, Kenosha, WI 53143 -- the same address registered to Jugar LLC and B-H Group Inc.

Most critically: Kirby controlled the timing of financial statement postings to the tenant portal.

The December statement was not posted until February 13.

A delay that kept Torresin uninformed of his account status during the precise window in which the enterprise was manufacturing the grounds for eviction.

This was not a clerical error. It was information control.

Kirby was identified as a witness in the pretrial report for Case No. 18CV000899.

## QUESTION 4. Alleged victims and injuries.

### [ NICHOLAS L. TORRESIN ]

Lost real property at 5819 52nd St, Kenosha, WI 53144. Fair market value: $420,000-$435,000 per expert appraiser James Leech (the Kruser appraisal of $237,500 was reverse-engineered to support the scheme).

Lost rental income April 2018 through June 2026: $527,404.20 (calculated in DOC-010).

Three additional properties were sold under financial duress caused directly by the enterprise's conduct:

(1) 1717 Shumann Drive.

(2) 2501 S. Browns Lake Drive.

(3) 3567 14th Ave.

Paid substantial legal fees to retained counsel over the course of the litigation -- full accounting subject to review of complete client files and billing records.

The February 2017 transaction conveyed 5819 52nd Street to Jugar LLC. Jugar satisfied the outstanding Southport Bank mortgage of approximately $197,000 at closing (Exhibit 4). Torresin received no cash consideration -- his only benefit was the lease and option to purchase documented in the February 1, 2017 agreement.

- 11 -

Total documented damages: approximately $1.1M-$2.3M compensatory; trebled under 18 U.S.C. Section 1964(c) = up to approximately $6.9M, plus attorney's fees and costs.

*Note on duplex properties: Torresin's three duplexes were owned by him personally -- not through any LLC. The financial damage from the manufactured defaults, tax non-payment, and destroyed equity from those properties hit Nicholas L. Torresin personally, compounding the car lot injury.*

## [ TORRESIN REAL ESTATE INVESTMENTS, LLC ]

Torresin Real Estate Investments, LLC lost its primary income-producing asset at 5819 52nd Street and was subjected to fraudulent eviction proceedings. The enterprise's conduct effectively destroyed the entity's business operations entirely.

## QUESTION 5. Pattern of racketeering activity.

### 5(a) -- Predicate Acts and Statutes Violated

| | | |
|---|---|---|
| Wire Fraud | 18 U.S.C. Section 1343 | 46 emails between Dunn and Hervat (Jan 2017-Sept 2018) coordinating lease fraud, option scheme, and eviction; Dunn's Feb 15, 2017 unauthorized Southport threat email (BHGI 0641); Monson's Oct 29, 2019 email (Exhibit 11) transmitting 109 pages of Torresin's financial records to designated expert witness Griese; all electronic communications used to plan, execute, and conceal the scheme. |
| Mail Fraud | 18 U.S.C. Section 1341 | Written notices of default, lease documents, option agreements, and correspondence sent through mail or interstate carriers in furtherance of the scheme. |
| Money Laundering | 18 U.S.C. Section 1956; Wis. Stat. Section 943.895 | The $60,000 Carlson deposit routed through B-H Group trust account into Jugar LLC operating account before the eviction date. |

| | | |
|---|---|---|
| Conversion | Wis. Stat. Section 895.446 | Hervat held Torresin's rental revenue in B-H Group trust accounts and deliberately withheld property tax payments while holding sufficient funds to pay them -- using Torresin's own money as the weapon of manufactured default. |
| Obstruction of Justice | 18 U.S.C. Section 1503 | Monson's false sworn pretrial report and false affidavit; Hervat's perjured testimony in 2021SC000877; privilege log concealing 46 Dunn-Hervat emails. |
| Extortion / Hobbs Act | 18 U.S.C. Section 1951; Wis. Stat. Section 943.30 | Using the fraudulent lease and manufactured default to deprive Torresin of his property under color of contractual right. |
| Fraudulent Conveyance | Wis. Stat. Section 242.04 | Warranty Deed No. 1790674 -- transfer of 5819 52nd Street from Torresin/TREI to Jugar LLC on February 16, 2017 -- executed in furtherance of the scheme and anchored as a fraudulent conveyance predicate. Further conveyances subject to discovery. |
| Tortious Interference / Wire Fraud -- Lawler Concrete | 18 U.S.C. Section 1343 | Beginning Oct 11, 2017, Hervat covertly solicited Lawler Concrete away from 5819 52nd St to a competing Jugar property via text messages -- while serving as Torresin's fiduciary. Caused $2,400 documented lost rent. |
| Extortion / Hobbs Act -- Johnson Threat | 18 U.S.C. Section 1951 | April 25, 2025 -- Von Briesen & Roper -- Terry E. Johnson to Russell J. Karnes: "If Mr. Torresin stops pursuing his baseless complaints and stops bothering Mr. Corris...it is likely that the bills will not be pursued. We suggest that Mr. Torresin guide himself accordingly." -- a communication designed to chill Torresin's pursuit of complaints against Corris. |

## 5(b) -- Chronological Predicate Acts

January 12-13, 2017: Hervat and Dunn email exchange regarding payoff statements and escrow -- wire fraud predicate.

February 1, 2017: Lease created by Dunn and Hervat -- fraudulent instrument -- 5-year term designed to give Jugar LLC possessory rights and manufacture a future default.

February 15, 2017: BHGI 0641 -- Dunn emails Southport's attorney Schuster (Stupar Schuster & Bartell S.C.) threatening Southport with a slander of title lawsuit in

- 13 -

Torresin's name -- without Torresin's knowledge or authorization. Wire fraud predicate -- unauthorized use of Torresin's name in interstate wire communication.

February 16, 2017: Southport mortgage release AND deed transfer -- same day. Warranty Deed No. 1790674 executed. Dunn's unauthorized Southport threat cleared the title; the deed transferred to Jugar. Torresin received zero cash proceeds -- all went to pay Southport mortgages.

February 23, 2017 -- March 2017: Multiple Dunn-Hervat emails regarding property transactions -- wire fraud -- coordinating the scheme.

March 21, 2017: Kerkman & Dunn paid $1,052 from B-H Group accounts, labeled "legal expense working on Torresin Real Estate deal" -- Dunn on the payroll of the scheme.

March 27, 2017: Hervat SMS -- "My attorney thinks we should wait to ask until the docs are signed. He does not want to draw attention to 5819 52nd Street" -- direct documentary evidence of coordinated concealment. Wire fraud predicate.

February 2017: $60,000 Carlson Deposit -- routed from B-H Group trust account into Jugar LLC operating account. Money laundering predicate.

October 11, 2017: Lawler Concrete Solicitation -- Hervat, acting as Torresin's property manager (fiduciary), covertly solicited Nate Lawler (Lawler Concrete) via text messages to vacate 5819 52nd St and lease a competing Jugar property at higher rent. Wire fraud predicate. Caused $2,400 documented lost rent. Occurred concurrently with the engineering of the manufactured property-tax default.

**December 2017 -- February 19, 2018: The 15-Step Manufactured Default**

(1) Oct 11, 2017 -- Hervat diverts Lawler Concrete -- eliminating $800/month income.

(2) Dec 2017 -- B-H Group increases reserve $1,500 without written notice or consent.

(3) Dec 2017 -- B-H fails to upload December income/expense statement until February 13, 2018.

(4) Dec 2017 -- 2017 property tax bill mailed to Jugar at 6113 14th Ave -- Jugar receives it December 2017 but does not forward until mid-January 2018.

(5) Jan 22-31, 2018 -- Torresin calls B-H repeatedly -- no clear answers.

(6) Jan 22-31, 2018 -- Torresin speaks to Hervat -- Hervat does not mention default or that taxes will not be paid.

(7) Feb 1-2, 2018 -- Torresin calls repeatedly -- receives only texts that Hervat is "plowing snow."

(8) Feb 2, 2018 -- Ten Day Notice sent to wrong address -- Torresin does not receive until February 13.

(9) Feb 2-13, 2018 -- Torresin receives no response from B-H Group -- no income statement -- no tax confirmation -- eleven days of deliberate silence.

(10) Feb 13, 2018 -- B-H uploads December statement AND Torresin receives misdirected notice -- same day.

(11) Feb 19, 2018 -- 12:28 PM -- Torresin's representative emails B-H confirming taxes already paid from trust account.

(12) Feb 19, 2018 -- 3:00 PM -- Hervat emails back: taxes paid by Jugar, lease "considered terminated," eviction commenced -- within hours of confirmation.

(13) Feb 19, 2018 -- Jugar files eviction (2018SC000731 -- Exhibit 12), represented by Dunn.

(14) Feb 19, 2018 -- Torresin pays $14,921.31 to cure alleged default -- Jugar proceeds with eviction anyway.

(15) Mar 16, 2018 -- Eviction granted. Judge Kerkman states: "I agree with Attorney Corris that it appears that the Plaintiff's motive is to cut off the Defendant's right to purchase." -- a contemporaneous judicial finding that the enterprise's purpose was intentional deprivation of Torresin's option right.

August 9, 2018: Torresin files Case No. 18CV000899 -- Kenosha County Circuit Court -- civil action to recover 5819 52nd Street and option rights.

September 23, 2019: Dunn sends an unfiled motion for sanctions -- a private threat instrument -- directly to Corris. Never filed. Not on the court docket. The motion named Corris personally. Sent three days after Dunn's motion to dismiss Jugar. Six weeks after Corris demanded discovery into the Bergquist-Hervat family relationship. The conspiracy claim was abandoned six weeks later.

October 29, 2019: Monson transmits 109 pages of Torresin's federal and state tax returns and IRS-related financial records to Griese (Inter Hold LLC, New Berlin, WI) via email -- one day after designating Griese as expert witness -- without court authorization -- in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78. Wire fraud and federal criminal violation predicate.

November 30, 2019: Torresin and Attorney Jason R. Pilmaier (Bar No. 1070638, Howard, Solochek & Weber, S.C.) were put in the hallway. Corris remained inside with Dunn and Monson -- plaintiff's counsel in a private meeting with both adverse parties' counsel -- from which Torresin was excluded. No record made of the meeting. Corris emerged and advised Torresin to abandon the conspiracy and aiding and abetting claims -- the claims most damaging to Dunn. The product of Dunn's September sanctions pressure and the July discovery demands that preceded it. Obstruction of judicial process predicate.

December 14, 2020: Dunn "squeeze the insurer" letter -- explicit documented statement of intent to use financial attrition against Torresin. Extortion/bad faith litigation

strategy predicate.

March 2022: Kruser appraisal reverse-engineered to $237,500 (Leech found true value $420,000-$435,000) -- fraud on the court. Evidence of premeditation: the enterprise had advance knowledge of the target acquisition price and worked backward to justify it.

April 25, 2025: Johnson threat letter (Von Briesen & Roper, Terry E. Johnson to Russell J. Karnes) -- threatening economic retaliation if Torresin continued pursuing "baseless complaints" and demanding Torresin "guide himself accordingly" -- designed to chill Torresin's pursuit of complaints against Corris. Hobbs Act predicate.

### 5(c) -- Wire Fraud Particularity (Fed. R. Civ. P. 9(b))

Wire Fraud Act No. 1: February 1, 2017 -- Email, Dunn to Hervat (Exhibit 8), RE: lease for Torresin Realty -- sent via electronic mail -- from Dunn (Milwaukee) to Hervat (Kenosha) -- content: provisions for the fraudulent 5-year lease designed to manufacture default and eviction -- misrepresentation: lease presented as a standard management agreement when actually designed to give Jugar LLC possessory rights over Torresin's property.

Wire Fraud Act No. 2: February 15, 2017 -- Email, Dunn to Schuster (Stupar Schuster & Bartell S.C., Southport's attorneys) -- sent via electronic mail -- Bates No. BHGI 0641 -- content: threatened Southport with slander of title lawsuit in Torresin's name without authorization; argued second mortgage legally uncollectible -- misrepresentation: Dunn held himself out as authorized to threaten litigation on Torresin's behalf when no such authorization existed and no attorney-client relationship with Torresin had ever been formed.

Wire Fraud Act No. 3: October 29, 2019 -- Email, Monson to Griese (joegriese@wi.rr.com) -- sent via electronic mail -- from Monson (Milwaukee area) to

Griese (New Berlin, WI) -- content: 109 pages of Torresin's federal and state tax returns and private financial records -- transmitted without court order, without subpoena, and without Torresin's knowledge or consent -- in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78 -- one day after Griese was designated as expert witness for defendants. Griese's analysis was conducted exclusively from defendants' one-sided production -- Torresin and his counsel were never contacted.

Wire Fraud Act No. 4: December 14, 2020 -- Letter/wire, Dunn -- "squeeze the insurer" -- interstate wire/mail -- content: explicit statement that the enterprise's strategy was to pressure _____ insurance carrier rather than adjudicate on the merits.

## 5(d) -- Criminal Conviction

No criminal conviction to date. A John Doe proceeding has been filed with the Kenosha County District Attorney. The matter is pending.

## 5(e) -- Civil Litigation History

Case No. 18CV000899 -- Kenosha County Circuit Court -- civil action filed August 9, 2018 by Torresin to recover 5819 52nd Street and option rights. Dismissed following withdrawal of retained counsel.

Case No. 24CV000092 -- dismissed with prejudice January 13, 2026. Circumstances and record of that proceeding are incorporated by reference.

Case No. 2021SC000877 -- small claims -- judgment in favor of B-H Group against Torresin: $5,838.08. Hervat testified falsely under oath in this proceeding.

DSPS Case No. 22 REB 119 (Exhibit 23) -- Hervat/B-H Group -- ACTIVE, ongoing.

## 5(f) -- Pattern of Racketeering Activity

The predicate acts span from January 2017 through at least April 2025 -- a period of more than eight years of documented conduct. They involve multiple participants (Hervat, Bergquist, Belongia, Dunn, Monson, Griese) acting in coordinated roles. The acts share a common purpose: to acquire Torresin's property through fraudulent means, sabotage his ability to exercise his option to purchase -- through fifteen manufactured defaults and conversion of his trust account funds -- extract maximum rental income, prevent Torresin from recovering the property or damages, and conceal the scheme. The pattern involves multiple victims (Torresin personally and TREI), multiple transactions, multiple courts, and multiple attorneys. Both the continuity and relatedness required for a RICO pattern under H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), are satisfied.

### 5(g) -- Common Plan or Scheme

Yes. The predicate acts are all part of a single coordinated scheme to:

(1) Acquire 5819 52nd St through a fraudulent lease and option.

(2) Sabotage Torresin's ability to exercise his option to purchase through manufactured defaults and conversion of trust funds.

(3) Manufacture a tax default to evict Torresin.

(4) Route the $60,000 Carlson deposit through B-H Group and Jugar LLC.

(5) Conceal Hervat's personal involvement through perjured testimony.

(6) Use litigation as a weapon to exhaust Torresin financially.

(7) Chill all regulatory and legal activity through economic threats.

Every participant had a defined role. The Hervat SMS of March 27, 2017 confirms real-time coordination between Hervat and his attorney to conceal the scheme from all transaction parties.

---

## QUESTION 6. The alleged enterprise.

### 6(a) -- Members of the Enterprise

Brian Hervat (individual); B-H Group Inc. (Wisconsin corporation); Jugar LLC (Wisconsin LLC); Kenneth Bergquist (individual); Eric Belongia (individual); Michael P. Dunn (attorney, Kerkman & Dunn); with associate participation by Erik Monson (attorney) and Joe Griese (designated expert witness for defendants, Inter Hold LLC).

### 6(b) -- Structure, Purpose, and Course of Conduct

The enterprise is a property acquisition and asset-stripping operation based in Kenosha, Wisconsin. Its structure:

> Hervat operates as the de facto principal, using a network of nominally independent LLCs (Jugar LLC and others to be identified through property record searches) to acquire properties, strip equity, and shield personal liability.
>
> B-H Group Inc. serves as the operational arm -- collecting rent, controlling trust accounts, and providing the appearance of legitimate property management.
>
> Attorneys Dunn and Monson serve as the legal infrastructure -- creating fraudulent instruments, suppressing evidence, and weaponizing litigation.

The enterprise has operated continuously since at least 2012 -- when Belongia appeared in Kenosha County Circuit Court as a claimed member of Jugar LLC (Case No. 2012SC002988) -- and was still active as of the date of this filing (B-H Group website confirms ongoing operations). Hervat and Bergquist share a documented history predating the Torresin transaction -- including Case No. 2013CV000249 (Citizens Bank of Mukwonago) in which both were named defendants on a judgment of $885,142.47, satisfied December 11, 2013. The enterprise's portfolio of approximately 30-50 properties was accumulated over multiple years through methods that include, but are not limited to, the conduct described herein.

Public records reflect that the enterprise's principals operated through a network of at least fifteen entities over time -- including Resolute Equity LLC, Renatus LLC, Belongia Hervat Properties LLC, Belongia Hervat Realty Inc., ALLTID NOGA LLC, and others -- the full scope of which is subject to discovery.

*Note -- RICO X (Federal Criminal Referral): Plaintiff has identified a pattern of pre-Torresin conduct including alleged bank fraud across multiple Wisconsin financial institutions (2012-2015) through which the enterprise accumulated its current property portfolio. This conduct has been reported to Wisconsin DSPS (Case No. 22 REB 119) and is flagged for separate submission to the FBI Milwaukee Field Office and the US Attorney for the Eastern District of Wisconsin as part of a federal criminal referral package to be submitted following the filing of this civil RICO action.*

### 6(c) -- Defendants as Officers/Employees of the Enterprise

Brian Hervat -- de facto principal/director of B-H Group Inc. and controls Jugar LLC.

Eric Belongia -- responsible broker of B-H Group Inc., owner of Vertical Props LLC, and claimed Jugar LLC member as of 2012.

Kenneth Bergquist -- nominal sole member of Jugar LLC who signed the lease as Member.

Michael P. Dunn -- attorney, named defendant, co-architect of the fraudulent lease, paid from enterprise accounts, filed abusive sanctions motion, authored the squeeze the insurer strategy.

### 6(d) -- Person/Enterprise Distinction

The liable "persons" under Section 1962(c) are the individual defendants (Hervat, Belongia, Bergquist) -- they are distinct from the enterprise (B-H Group Inc., Jugar LLC) as required by Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001).

B-H Group Inc. and Jugar LLC are the enterprises; the individual defendants are the persons who conducted their affairs through a pattern of racketeering activity.

---

## QUESTIONS 7-10. Enterprise, pattern, commerce, and benefits.

---

### 7 -- Enterprise and Pattern

The pattern of racketeering activity and the enterprise are related but analytically separate. The enterprise (B-H Group/Jugar LLC network) is the structure through which the racketeering activity is conducted. The racketeering activity is the means by which the enterprise achieves its goals. Under Section 1962(c), the individual defendants are the "persons" who conducted the enterprise's affairs through the pattern -- satisfying the distinction required by Reves v. Ernst & Young, 507 U.S. 170 (1993). They have not merged.

### 8 -- Enterprise vs. Legitimate Business Activity

B-H Group Inc. holds itself out as a legitimate property management company. The racketeering activity differs from legitimate property management in that:

(a) The lease was fraudulently crafted to manufacture a default.

(b) The option agreement was a fraudulent instrument used to claim ownership.

(c) Trust account funds were misappropriated and property taxes deliberately withheld.

(d) The $60,000 Carlson deposit was routed to conceal its source.

(e) Litigation was used as a weapon of financial attrition.

*The racketeering activity is the enterprise's actual business model -- the legitimate property management facade is the cover.*

- 22 -

Case 2:26-cv-01240-BHL    Filed 07/15/26    Page 22 of 31    Document 1

## 9 -- Benefits Received by the Enterprise

Title to and possession of 5819 52nd St, Kenosha, WI 53144 (fair market value $420,000-$435,000).

All rental income from the property, April 2018 through present ($527,404.20 calculated through June 2026).

The $60,000 Carlson deposit --

Elimination of Torresin as an owner and as a competing claimant to the property.

A $5,838.08 judgment entered against Torresin personally.

The enterprise continues to benefit -- B-H Group Inc. was still operating as of the date of this filing.

## 10 -- Effect on Interstate Commerce

Wire communications (emails) crossed intrastate boundaries using interstate wire networks. The $60,000 Carlson deposit and property transactions involved financial institutions engaged in interstate commerce. TREI was engaged in rental property management with interstate commerce nexus through insurance, utilities, and banking relationships. The enterprise's ongoing operations constitute a commercial enterprise affecting the Wisconsin real estate market, intertwined with interstate capital flows and federally regulated lending.

---

## QUESTIONS 11-14. Income, acquisition, participants, and conspiracy.

---

## 11 -- Income from Racketeering (Section 1962(a))

- 23 -

Brian Hervat (through B-H Group Inc. and Jugar LLC). Kenneth Bergquist (as nominal member of Jugar LLC). Eric Belongia (through Vertical Props LLC). Rental income from 5819 52nd St was collected by B-H Group Inc. and distributed through the enterprise. The $60,000 Carlson deposit was invested in Jugar LLC's operating account. Kerkman & Dunn was paid from B-H Group Inc. accounts -- racketeering proceeds used to fund the legal infrastructure of the enterprise.

**12 -- Acquisition Through Racketeering (Section 1962(b))**

Hervat acquired and maintained control of 5819 52nd St and of the enterprise through the pattern of racketeering: the fraudulent lease gave Jugar LLC possessory rights; the manufactured default and eviction transferred actual possession; and the transfer of assets (subject to discovery) maintained those interests against recovery by Torresin.

**13 -- Persons Conducting the Enterprise (Section 1962(c))**

Brian Hervat -- de facto principal/director of B-H Group Inc. and Jugar LLC.

Eric Belongia -- former responsible broker of B-H Group Inc., owner of Vertical Props LLC, and claimed Jugar LLC member as of 2012.

Kenneth Bergquist -- nominal sole member of Jugar LLC.

Michael P. Dunn -- attorney, named defendant, co-architect of the fraudulent lease, paid from enterprise accounts, sent unfiled sanctions motion as private threat instrument, authored the squeeze the insurer strategy.

Erik Monson -- attorney, associated as co-counsel.

Joe Griese -- associated as designated expert witness for defendants.

**14 -- The Conspiracy (Section 1962(d))**

The conspiracy began no later than January 2017 when Dunn and Hervat began exchanging emails about the Torresin property transaction. Each defendant participated in one or more elements of the scheme, including:

(1) Create a fraudulent lease giving Jugar LLC possessory rights.

(2) Sabotage Torresin's option through manufactured defaults and conversion of trust funds.

(3) Evict Torresin through fraudulent legal process.

(4) Route the $60,000 Carlson deposit through B-H Group Inc. to Jugar LLC.

(5) Conceal Hervat's personal control of Jugar LLC from transaction parties, courts, and regulators.

(6) Use litigation as a weapon of financial attrition.

(7) Chill regulatory proceedings through economic threats.

The Hervat SMS of March 27, 2017 -- "My attorney thinks we should wait to ask until the docs are signed. He does not want to draw attention to 5819 52nd Street" -- is direct documentary evidence of the conspiracy agreement and real-time coordination between Hervat and his attorney to conceal the scheme.

A sitting judge independently confirmed the conspiracy's central purpose. On March 16, 2018, Judge Chad G. Kerkman stated in Kenosha County Circuit Court Case No. 2018SC000731:

"I agree with Attorney Corris that it appears that the Plaintiff's motive is to cut off the Defendant's right to purchase."

This judicial admission, made contemporaneously with the scheme, directly corroborates the conspiracy allegation that the enterprise's purpose was intentional deprivation of Torresin's option right.

- 25 -

The manufactured default itself was not merely opportunistic but deliberately engineered over months -- a 15-step documented timeline establishes coordinated premeditation across Hervat, B-H Group, and Jugar LLC. The conspiracy continues: the enterprise was still operating as of the date of this filing; the DSPS investigation is ongoing; assets have not been returned.

## QUESTIONS 15-17. Injury, causation, and damages.

### 15-16 -- Injury and Direct Causation

| | | |
|---|---|---|
| Real property -- 5819 52nd St | $420,000-$435,000 | Expert appraiser James Leech; Kruser appraisal reverse-engineered to $237,500 |
| Lost rental income (Apr 2018-Jun 2026) | $527,404.20 | DOC-010 calculation |
| Forced property sales under financial duress (3 properties) | Subject to confirmation | 1717 Shumann Dr; 2501 Browns Lake Dr; 3567 14th Ave -- sold under financial duress caused by the enterprise |
| Legal fees paid to retained counsel | Subject to full accounting | Complete client files and billing records |
| Small claims judgment | $5,838.08 | Case No. 2021SC000877 |
| **TOTAL COMPENSATORY** | **~$1.1M-$2.3M** | |
| **TREBLED (18 U.S.C. Section 1964(c))** | **~$3.3M-$6.9M** | Plus attorney's fees and costs |

### 17 -- Per-Defendant Damages

All defendants are jointly and severally liable for enterprise damages.

Brian Hervat -- all damages as primary architect; compensatory total approximately $1.43M-$1.45M; trebled: approximately $4.3M-$4.35M plus attorney's fees.

B-H Group Inc. -- joint and several liability; trust account misappropriation of the $60,000 Carlson deposit independently attributable.

Jugar LLC -- joint and several; additionally liable for fraudulent eviction judgment and lost rental income from date of possession.

Kenneth Bergquist -- joint and several as knowing participant through nominal Jugar membership.

Eric Belongia -- joint and several plus additional liability for de facto Jugar membership dating to 2012.

Michael P. Dunn -- joint and several as named defendant; additionally liable as co-architect of the fraudulent lease, author of unauthorized Southport threat (BHGI 0641), and architect of the financial attrition strategy documented in the December 14, 2020 letter.

---

## QUESTIONS 18-19. Federal causes of action and state claims.

---

### 18 -- Federal Causes of Action

18 U.S.C. Section 1962(a) -- RICO -- investment of racketeering proceeds in an enterprise affecting interstate commerce.

18 U.S.C. Section 1962(b) -- RICO -- acquisition and maintenance of an interest in an enterprise through racketeering.

18 U.S.C. Section 1962(c) -- RICO -- conducting the affairs of an enterprise through a pattern of racketeering activity.

18 U.S.C. Section 1962(d) -- RICO conspiracy.

18 U.S.C. Section 1343 -- Wire fraud (as predicate act and independent cause of action).

18 U.S.C. Section 1956 -- Money laundering.

42 U.S.C. Section 1983 -- Deprivation of civil rights under color of state law (to be further evaluated if state actors participated in suppression of regulatory complaints or judicial proceedings).

**19 -- Pendent State Claims**

Wis. Stat. Section 946.83 -- Wisconsin Organized Crime Control Act (WOCCA).

Wis. Stat. Section 946.87 -- Civil RICO remedies (treble damages, attorney's fees).

Wis. Stat. Section 943.895 -- Money laundering.

Wis. Stat. Section 946.31 -- Perjury (Hervat small claims testimony; Monson affidavit).

Wis. Stat. Section 242.04 -- Fraudulent conveyance -- Warranty Deed No. 1790674 -- anchored to February 16, 2017 transfer -- further conveyances subject to discovery.

Common law fraud.

Breach of fiduciary duty (B-H Group Inc. as property manager owed fiduciary duty to Torresin as owner).

Breach of contract.

Unjust enrichment.

Conversion (Hervat's deliberate non-payment of property taxes using Torresin's own trust account funds).

---

## QUESTION 20. Additional material information.

---

**(1 -- Two Acts of Fraud, One Enterprise):**

The enterprise operated in two distinct acts. Act One was the acquisition: a fraudulent lease, unauthorized legal threats to Southport Bank (BHGI 0641), and a manufactured tax default stripped Torresin of his property. Act Two was the sabotage: as fiduciary, Hervat systematically engineered fifteen manufactured defaults, withheld property taxes using Torresin's own trust account funds, diverted tenants, and suppressed financial information -- ensuring Torresin could never defend the opportunity to exercise his option to purchase. The fraud was not a single bad moment; it was a sustained, premeditated campaign using Torresin's own resources as the weapon.

### (2 -- BHGI 0641):

Dunn's February 15, 2017 email to Southport's attorneys threatening a slander of title lawsuit in Torresin's name (BHGI 0641) was produced by B-H Group only because Southport's attorneys independently possessed it -- making suppression impossible. The three pages withheld behind privilege represent the only Dunn-Hervat communications for which no third party existed who could be subpoenaed. The crime-fraud exception applies to those withheld pages: Dunn was actively facilitating wire fraud and unauthorized legal threats -- conduct that falls outside any privilege.

### (3 -- Premeditation -- Appraisal Manipulation):

Expert appraiser James Leech found the Kruser appraisal was reverse-engineered to the target price of $237,500 against a true fair market value of $420,000-$435,000. This indicates the enterprise had advance knowledge of the target acquisition price and worked backward to justify it -- strong evidence of premeditation.

### (4 -- Enterprise Is Ongoing):

B-H Group Inc. was still actively marketing property management services as of the date of this filing. Multiple other properties are managed by the same network of LLCs. The enterprise poses a continuing threat to other property owners.

**(5 -- Financial Attrition Was Intentional and Successful):**

Torresin was forced to sell three separate properties under financial duress caused directly by the enterprise's conduct. The financial attrition strategy, articulated in Dunn's December 14, 2020 letter, was intentional and successful in depleting Torresin's resources.

**(6 -- Relationship to DOC-057):**

This RICO Statement (DOC-021) concerns the Property Fraud Enterprise. DOC-057 concerns the separate Legal Cover-Up Enterprise assembled afterward to protect this one. The two enterprises are cumulative, not alternative. Combined trebled damages from both: approximately $4.3M-$4.35M (DOC-021) plus approximately $1.146M+ (DOC-057) = approximately $5.4M-$5.5M, plus attorney's fees and costs.

**(7 -- Pending Regulatory and Disciplinary Proceedings):**

DSPS Case No. 22 REB 119 (Hervat/B-H Group) -- ACTIVE. OLR complaints filed against Corris, Karnes, Frank, Dunn, and Monson. A John Doe proceeding has been filed with the Kenosha County District Attorney. These proceedings may yield additional documentary evidence relevant to the RICO claims.

## CONCLUSION

Based on the foregoing, Plaintiff Nicholas L. Torresin respectfully submits that the facts of this case satisfy all elements of a federal civil RICO claim under 18 U.S.C. Sections 1962(a), (b), (c), and (d). The enterprise is specifically identified. The predicate acts are enumerated with particularity including BHGI 0641. The pattern of racketeering activity is documented. The direct causal relationship between the predicate acts and Plaintiff's injuries is demonstrated. The damages are calculated and supported by expert appraisal, financial records, and documentary evidence.

- 30 -

Plaintiff respectfully requests treble damages pursuant to 18 U.S.C. Section 1964(c), plus reasonable attorney's fees and costs, and all other relief to which Plaintiff is entitled at law or equity.

Respectfully submitted,

Nicholas L. Torresin

304 18th Ave #5, Union Grove, WI 53182

Pro Se Plaintiff

July 15, 2026

262-287-3221